The next case today is Omari Vladimir Reyes-Batista v. Merrick B. Garland, appeal number 21-1111. Attorney Altman, please introduce yourself for the record and proceed with your argument. May it please the court, good morning, your honors, and Mr. Cochran, Stuart Altman for Omari Reyes-Batista. Your honor, Mr. Batista came to the United States when he was 14 years old as a legal permanent resident based on his mother. He was later arrested for a controlled substance and put in immigration proceedings. At those immigration proceedings, the prevailing law at the time in immigration, if someone had been arrested for a criminal offense, was a 212C, your honor. And at that time, you met the requirement for 212C. If you had been seven years a resident and you had a legal permanent resident card and had not served more than five years in prison at that time, Mr. Reyes showed up at that hearing, your honor, and first the immigration service informed the immigration judge that he did not have the requisite seven years in. Then the judge said that he didn't have the seven years in, and then Mr. Reyes-Batista's counsel withdrew the application for the 212C based on what the judge said and the DHS counsel stated at that time, and Mr. Reyes-Batista was deported. However, shortly after that, he reentered the United States and had been living a law-abiding life in the United States until about 2015 when he was re-arrested and that brought forward the proceedings in this matter, your honor. Mr. Batista, this is a very convoluted case. It's multiple states, multiple courts, both criminal and immigration, your honor. Counsel, doesn't the latest conviction, and he's been convicted, I know he's appealing it, but doesn't that moot any relief? Because that conviction was going to get him removed from the United States no matter what. Your honor, it could, your honor, but the judge pre-terminated the hearing in this matter, and Mr. Reyes-Batista was not allowed to go forward with any evidence or any applications at that hearing, your honor. So, in the end, your honor could be correct, but the problem being all 1996, and that has led to all the issues here. What if Mr. Reyes-Batista was put back in position? What if Mr. Reyes-Batista had his green card, and would there be any, for what he is charged with now, would that merit taking back the green card, I should say legal permanent resident card, that's the correct term, your honor. But Mr. Reyes-Batista has been precluded all along from having a hearing on these issues. But the 1996 removal, or back then it was called deportation still, I think, that has nothing to do with the fact he's got a current conviction. As a matter of fact, it's a federal conviction. That's not the cause of that conviction. I'm aware of that, and I understand, your honor. However, the judge pre-terminated that case. There was no evidence taken in that case, your honor, regarding his application for the cancellation or removal as the judge pre-terminated based on the issues as stated in Judge Masters in his decision, and also based on issues that previously happened in this case, your honor. Mr. Ullman, I thought for the non-pro-tump relief, it has to finally dispose of the matter. There has to be nothing else that would be present. I can't find a case in which there's a subsequent illegal re-entry, and yet the non-pro-tump relief is granted. Are you aware of one? Well, your honor, there is a case, I'll try to pronounce it correctly, matter of Ratakos, your honor. And what that case says is that if it's appropriate and necessary to completely dispose of the case. And it talks about, in that case, if there were steps that would make available the discretionary relief from deportation, which could depose of all grounds of exclusion of deportation. And the cases that your honor is citing, I believe, is matter of Roman. I'm just asking, I'm asking, is there a case in which non-pro-tump relief has been granted to a petitioner who, subsequent to the proceeding that he's trying to get the 212 relief for, based on the non-pro-tump, illegally re-entered the country? Um, is that, that's what you've got here, right? That is correct, your honor. So I just, I just haven't seen a case in which non-pro-tump relief has been deemed available in that circumstance. And it seems to me a little bit odd that it would be. Um, your honor, uh, let me just say, say this, um, there's a case in the Second Circuit, Edwards, uh, which held that he only need demonstrate he was erroneously denied the opportunity to apply for 212C relief and that, but for the non-pro-tump relief, uh, the denial would be irremediable, your honor. And there's also a case matter of... But in that, in that case, was there a subsequent illegal re-entry like there is here? Um, I'm trying to remember, your honor. I know in Salgado Diaz, there was. Salgado Diaz? Yeah, I'm trying, uh, and it was mentioned in counsel's brief, not my own, your honor. Uh, but that, that was on a different theory of it, your honor. And I'll, I'll, I'll answer on Salgado Diaz as well, where someone... Counsel, let me, let me say, Judge Barron said, is asking about a subsequent illegal re-entry, but here you have subsequent illegal re-entry plus the commission of a federal offense also. So that's, doesn't that, that aggravate your, your client's position? Uh, no, your honor. Um, the reason being is, uh, he was, he should never have been, uh, deported without the proper hearing in the first place, your honor. Okay. That may be, that may be true, but I guess, how does that excuse the illegal subsequent re-entry? He entered without inspection the second time. He didn't, and your honor must take this into consideration as well. Once a person is deported and they've been in the United States more than 180 days, they're not eligible to re-enter the United States for 10 years. So what other remedy would... That may be, but that may just be a way of showing that the non-proton relief is not available to a person once they've been removed. Now, maybe there's some reason to think that's wrong, but I just haven't seen anything that suggests that there is. Now, maybe it changes. Can you apply for non-proton relief from outside the country? Is there anything that bars you from doing that? Your honor, I've never had this situation and I'm unsure to be honest with you. Because if you could, then one possibility is that rather than coming back into the country illegally without seeking the non-proton relief first, you could have sought the non-proton relief. If you had gotten it, then that might've gotten rid of the 10 year bar. Then you could have come it back into the country legally. But I think the situation that's troubling here is without there being any non-proton relief, your petitioner, at least you're not disputing this, came back into the country through illegal means. And now, despite that, wants the non-proton relief. But just to answer your honor's question, there's nothing in the statute that says it cannot clear up if someone entered the country illegally, your honor. From my readings of... The non-proton relief, is there a statutory provision referring to non-proton relief? I thought that was an agency creation. Is that wrong? No, that's correct, your honor. Yeah. So it's the agency's case law determines the scope of that discretionary relief. And I just haven't seen it granted in the circumstance other than where they say it finally disposed of everything. And the government's position here is, and the BIA's position was, how it doesn't finally dispose of everything if there is a subsequent illegal re-entry, which would be a basis for exclusion just for that reason alone. I understand your theory, which is, well, he wouldn't have had to come in illegally if he hadn't been removed in the first place, and he shouldn't have been removed. The BIA hasn't endorsed that proposition, and so I don't see why it has to. I understand, your honor. But under their stating of the non-proton relief, it's to put you back in the position that you were before at the time of the error. And if he was put back in that position, your honor, he should have been, not only for the 212C waiver, but possibly his legal permanent resident card should have been taken away at that time. And he would be considered a legal permanent resident at the time he entered the United States. What's your best case for saying that that theory has been endorsed by the agency? Your honor, I'm going to quote a case, Salgado D.S., your honor. And I don't know if it's exactly on point. I don't want to mislead the court anyway. But that was a case where the Border Patrol, there was someone in immigration proceedings, the Border Patrol removed him outside of the country before immigration proceedings, and then he illegally reentered. And at that hearing, he wanted to have a hearing for what happened and bring in evidence regarding what happened with the Border Patrol and for taking him out and everything. And the court initially ruled against him. But this is in the Ninth Circuit, your honor. But then they ruled for Salgado D.S. that he should have an evidentiary hearing on this. And that's what we're asking for in this case, an evidentiary hearing regarding all that has gone on in this case. Don't you have a huge hurdle also in our circuit president, Pereira v. Gonzalez case? That's the law of the circuit. Your honor, I don't consider that a huge hurdle. I consider that a completely different factual case. I'm not actually in disagreement with that case. However, that court refused to follow, well, not refused, but didn't follow the Second Circuit Edwards, they said, because the statute prohibits anyone who has served five years in jail from receiving 212C relief. And this person has served six to seven years in jail at the time. And the court said, based on the statute, which specifically says this, we can't grant him any relief. And I'm not disagreeing with that. In this case, Mr. Ray did not serve over five years, so he would not be precluded in this matter. And it's a different case than Pereira, your honor. Let me ask you one additional question. Is your client still in the United States or he's been removed by now? He is still in the United States. Thank you, counsel. Thank you, your honor. You've reserved some time. If you'll mute your audio and your video, we'll hear from Mr. Cochran. Good morning, your honors. May it please the court, Todd Cochran, on behalf of the Attorney General. The court should deny the petition because Mr. Reyes cannot show that equitable estoppel, which this court has stated is invoked only in the most extreme circumstances, should apply, because an immigration judge in 1996 did not engage in affirmative misconduct by finding Mr. Reyes ineligible for relief under former INA Section 212C. Instead, the immigration judge consulted with both Mr. Reyes' counsel and DHS counsel and engaged in a good-faith interpretation of the law at that time to conclude that Mr. Reyes lacked the requisite seven years of unrelinquished domicile for 212C following his 1990 admission as a lawful permanent resident and his 1996 deportation order as a result of his conviction for a controlled available to Mr. Reyes because it would not dispose of all of his grounds of inadmissibility. Can you seek non-pro-tonk relief from outside the country? Your honor, I also, like Mr. Altman, I do not know the exact answer to that. I was trying to look that up real quick while he was arguing, but I don't have an answer to you for that. I will point out... If the chief judge has no objection to it, I'd appreciate it if the parties could just file it. Yes, of course, your honor. I will do that after the argument, your honor, for sure. Seven days, please. Yes, your honor, chief judge. May I continue? Sure. After Mr. Reyes was found deportable in 1996, he did not appeal the immigration judge's decision to the board. He did not file a motion to reopen. He was deported, and then he illegally reentered the United States. As a result of his decision to illegally reenter, he remained inadmissible on three charge grounds, and any non-pro-tonk 212c relief would not resolve his case. As a result, the court should deny the petition for review. I also wanted to address some of the issues... I'm just trying to understand the practicalities of how the non-pro-tonk relief works in the government's eyes. Yes. Is the way I'm understanding it, if this finally disposes of it, would seem to, unless you can file non-pro-tonk relief from outside the United States, would mean it's not available to anybody who's been removed? That seems to stand to reason, unless it's available from outside the United States, yes. Well, I haven't really seen the agency face up to whether they really mean that to be the position. In other words, the agency has this language which says, you know, it's finally disposed of it, but I guess I just don't... It's a relief to correct an error, and I guess I'm... Was that the import of that finally dispose of it, which is that if for some reason they don't get around to removing you yet, you can get the benefit of non-pro-tonk relief, but if they do get around to removing you, you can't get it? Or was the... I mean, I guess you're just going to answer this as to whether you can file for non-pro-tonk relief from abroad, but if you can't, it seems that the simpler point, but the agency's never articulated this way, is that it's relief available for those people that the agency hasn't gotten around to removing. But if they get around to removing you, even though you're just like the person who wasn't removed, you're kind of out of luck. Even though in both instances, it was a mistake to order the removal. That just seems a bit arbitrary to me. Do you follow what I'm... I mean, I'm just... It's a practical point. I'm just... Yeah, I think I'm following you, Your Honor. Again, we're not certain if it's available outside the country, so I can certainly address that with 28J that I'll file by next Friday. I don't know if Mr. Reyes could file for non-pro-tonk relief if he was outside the country. As I mentioned, he did have other things he could have pursued. He could have appealed the IJ decision in 1996. He did not do that. He did not file a motion to reopen with the immigration judge. Instead, you know... But if I'm right, none of those are preconditions for non-pro-tonk relief, at least that the agency's articulated that relief. Is that right? No, I don't believe they are, no. But yeah, my point certainly is he had other avenues of relief. And also, he also could have presented something with the border. The agency's theory of non-pro-tonk relief, which is that it seems like it's available to people in the country who have been removed, but for some reason were not actually then ordered removed, but were actually removed. But then we're just unclear if it's... I mean, but anyway, you see the point that I'm interested in. Yes, I understand your point, Your Honor. Yes. Let me ask you, your position, and I believe it's in your brief, that the Pereira versus Gonzalez case, it's still good law, it's binding, and it directs the result of this case, correct? That's correct, Your Honor. Yes, I believe the Pereira case does apply very closely in this case and does control. And opposing counsel, or at least argued to distinguish the case. Well, I think he's incorrect there. I think there's a couple of ways to distinguish that. First, the Pereira case, it recognized that the non-pro-tonk relief is used in certain circumstances to correct inadvertent or clerical errors, and it's not used to remedy a defect in the judgment, order, or decree at that time. Here, in this situation, the immigration judge in 1996 in Louisiana, again, consulted with his own legal knowledge of the INA. He discussed the seven-year unrelinquished domicile issue with Mr. Reyes's counsel at the time, and DHS counsel. They all agreed he didn't have the seven years because of his entry in 1990 as an LPR and his 1960 portation order. Also looked at, there was no Fifth Circuit or Board case law at that point in time, and to my knowledge, not to this date yet, it doesn't impute domicile. In my understanding, my understanding of the BIA's reason for denying the non-pro-tonk relief was not any of what you just said. I'm not saying what you said is wrong, it's just the BIA did not rely on that as the reason. Yes, the BIA relied upon the, even if you receive a non-pro-tonk relief, it would not remove all of the grounds for disability. Under Chenery, unless, I mean, I suppose if it was just dead clear that non-pro-tonk relief could not have been granted, the BIA's rationale is not related to our precedent in that regard, or the scope of non-pro-tonk relief. Generally, it's based on this particular case not having a situation in which the non-pro-tonk relief could finally dispose of the case. That was the ground, Your Honor, and it was based upon the choice of Mr. Reyes to illegally re-enter, as you pointed out during Petitioner's Counsel's time. One other point that I would like to make regards to Judge Helpy's question early on during Mr. Altman's time is Mr. Reyes's latest conviction, he wondered if that might make him removable and all this would be moot. That is certainly the case, those convictions are now final. The DHS, for all I know, did not charge him prior to now because they were on appeal. The DHS certainly could charge him as removability for those federal convictions, which would likely make most of this moot anyways. So I want to point that out. Do you know what, if the appeal had been resolved or it's still pending? I believe the Second Circuit affirmed the convictions, as I think I mentioned, a footnote in the brief, footnote, pardon me, your indulgence, Your Honor, footnote 2 on page 7. Okay, so if it was affirmed February 9, 2021, the only avenue would be, I assume, if no one bonk or cert petition was filed, it's final? Correct, that's my understanding is no one bonk or cert petition was filed in that matter, so it would be final, yes. And it would moot the whole other argument also, correct? I believe so, yes, Your Honor. If the court has no other questions, I'm happy to sum up briefly. Yes. The court should deny the petition because the agency properly determined that Mr. Reyes is not entitled to equitable estoppel. Is the immigration judge not engaged in any affirmative misconduct and any non-proton 212c relief would not resolve his case as he remains inadmissible on three charge grounds as a consequence of his decision to illegally re-enter after being lawfully removed. For the reasons discussed today in the answering brief, the court should deny the petition. Thank you, counsel. Mr. Cochran, if you would mute your audio and your let me ask you, before you have your two minutes, whatever you reserve, you agree that this second circuit affirmed it is final, that conviction, no one bonk, no cert petition, correct? Your Honor, I don't know if the appeal has been decided. I'm not his criminal attorney. If Your Honor is saying the second circuit decided on that, then I would agree that there would be a conviction in this matter. However, under current immigration law, there are two applications for cancellation of removal. One prohibits any criminal conviction at all, and one would consider what type of conviction of and weigh it against the equities in the case. I'm not sure if that applies in this matter because I don't have his criminal case, Your Honor, for what would be applied. However, I have applied with other people who have had criminal convictions on these cases. Okay, but what I'm thinking is there's a final conviction, unless you can tell us otherwise, but the government has represented that, at least in footnote two of the brief over a year and a It was final, at least circuit-wise. So, what I'm kind of getting at is the exercise, and I'm going back to the mootness issue, but if he's going to get removed based on this issue, and it's probably another, you know, again, another conviction, why do we have to go into this exercise of revisiting 1996 when, you know, there's a ground for removal now that's independent? Based on 1996, at the time, it was considered an aggravated felony. Under current law, there is no application he could do for an aggravated felony. I don't know if anything presented what he currently is convicted of is an aggravated felony, and if it's not, he is eligible for other relief, Your Honor. Thank you. Mm-hmm. And just briefly to say to the court, Your Honor, during the short break, I did try and look up if you could apply for non-proton outside of the United States. I didn't see anything come up, and the issue that complicates it a bit, and I will certainly do brief it, Your Honor, is that we have to go by the law that was in 1996 at the time, which predates the current law in this case, but I will certainly do that as well. And to briefly respond to counsel, Your Honor, there was misconduct in this case. Let me just, let me just anticipate. If you could file for non-proton relief from abroad, wouldn't it be a relatively sensible position for the agency to take that if you want to get the benefit of that, that's how you're supposed to do it? You don't anticipate that you will get it into the country illegally, hope you're not found. Then if you are found, ask for the non-proton relief. I mean, it seems like that would be a fairly reasonable position for the agency to take that you just can't get non-proton relief in that circumstance, particularly if there was a route where you could have done it, you know, in a more legally compliant manner by, it was a wrongful removal in your eyes, you seek non-proton relief from abroad, if you get a favorable answer to that, then you have a clean sheet, you can come into the country again. Well, that would seem like a relatively reasonable policy for the agency, unless you'd see it otherwise. I would respectfully disagree, your honor, and I'll tell you why. And maybe this is more from a practitioner's point of view. I've been doing immigration law for over 20 years. I find them to be wonderful clients, but they need lots of guidance. You're talking a lot of times with people who, there's different languages, different cultures, and they completely don't understand the laws of this country, maybe because the country they're coming from doesn't have much law. And it's your job as an attorney to guide them, and especially in this case, where he received ineffective legal representation from his own attorney at the time, and he did file a Lazada complaint, and even the judge was unaware of the law at the time, your honor. So, to expect him to know what the law is, especially once he's ordered removed, is a really big burden to place on immigrants, your honor. That, you know, they should know what to do. But the consequence of the position you're taking, though, is that that subsequent illegal re-entry, you want us to also just look past as if it didn't happen, correct? I want you to look past it, but not because it didn't happen, but because of the mistakes that were made prior to that, your honor. I know it, but it's just there's a little bit of an oddity in suggesting that somehow that earlier mistake in removing him excuses a subsequent illegal act. Well, your honor, may I just say something else about immigration law? And this goes back to the Lazada complaint that was filed. If a claim doesn't appear in court, that's one thing. If the claim doesn't appear in court because the attorney had the wrong date, that's another. And that's a Lazada complaint filed against the attorney, and that excuses the act of the person not appearing, or if there's some other type of mistake. That's what I'm saying. He didn't get wrongful legal advice telling him to come to the country illegally the second time. No, he didn't, your honor. But that's the feature of the case that seems a bit difficult. Well, your honor, I believe based on the first bad legal advice he got, that I think excused why it happened in this matter. Thank you, counsel. Thank you, your honor. That concludes argument in this case. Attorney Altman and Attorney Cochran, you should disconnect from the hearing at this time.